**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HAMDAN FAYAD, ) | Case No.: 10-CV-03372-LHK |
| ) | |
| Plaintiff, ) | ORDER GRANTING DEFENDANTS' |
| v. ) | MOTION FOR SUMMARY |
| ) | JUDGMENT; AND DENYING |
| CAROL KELLER, et al., ) | PLAINTIFF'S CROSS-MOTION FOR |
| ) | SUMMARY JUDGMENT |
| Defendants. ) | |
| ) | (re: Dkt. #13 and #17) |
| ) | |

Plaintiff Hamdan Fayad ("Plaintiff") brings suit against the Department of Homeland Security (DHS), U.S. Citizenship and Immigration Services (USCIS), and various officials (collectively "Defendants") in connection with USCIS's denial of his application for naturalization. Presently before the Court are the parties' cross-motions for summary judgment. The Court held a hearing on this matter on March 9, 2011. The parties agree that the key dispute is a legal one: whether Plaintiff satisfies the relevant three-year residency requirement for naturalization of lawful permanent residents. Because Plaintiff does not yet satisfy the residency requirement, the Court GRANTS Defendants' motion for summary judgment and DENIES Plaintiff's cross-motion for summary judgment.

1

Case No.: 10-CV-03372-LHK
ORDER GRANTING DEFENDANTS' MSJ; DENYING PLAINTIFF'S MSJ

# I. BACKGROUND

## A. Factual Background

The parties agree on the basic factual background. Plaintiff is a 37-year old native of Lebanon. *See* First Am. Compl. (FAC) ¶ 5. Plaintiff entered the United States on December 5, 1998 in F-1 student status. *See* Pl.'s Cross-Mot. for Sum. J. at 2. Plaintiff married Amal Ibrahim Ramlaoui ("Ms. Ibrahim"), a United States citizen, on February 13, 1999. *Id*. On March 23, 1999, Ms. Ibrahim filed an I-130 Petition for Alien Relative ("I-130 Petition"), and Plaintiff concurrently filed an I-485 Adjustment of Status application ("I-485 Application") to adjust his status to that of a Lawful Permanent Resident ("LPR"). *See* Exh. A and B to Defs.' Mot. for Sum. J. On December 15, 2000, the Immigration and Naturalization Service ("INS") approved the I-130 Petition and I-485 Application, and granted Plaintiff conditional permanent residence.[1]

On December 7, 2001, Plaintiff was convicted of a felony offense in violation of California Penal Code §273.5(a) (domestic violence). *See* Exh. D to Defs.' Mot. for Sum. J. Plaintiff was sentenced to 90 days imprisonment, imposed a fine, ordered 80 hours of community service, ordered mandatory domestic violence counseling, and sentenced to a three-year period of probation. *Id*. On May 7, 2003, the Santa Clara County Superior Court reduced Plaintiff's felony conviction to a misdemeanor. *Id*. According to Plaintiff, in June 2003, his conviction was expunged pursuant to California statute. *See* Exh. I to Defs.' Mot. for Sum. J at 12 ("Addendum to Form N-400 [Plaintiff's first naturalization application]").

## B. Removal Proceedings and Application for Naturalization

On May 19, 2006, DHS commenced removal proceedings against Plaintiff and served him with a Notice to Appear in immigration court in San Francisco, California. *See* Exh. E to Defs. Mot. for Sum. J. Plaintiff was charged with removability under 8 U.S.C. §1227(a)(2)(E)(i) for his conviction for domestic violence. During the removal proceedings, Plaintiff's spouse (Ms. Ibrahim) submitted a second I-130 Petition on November 3, 2006, and Plaintiff submitted a second I-485 Application on March 3, 2007. *See* Exh. G and H to Defs. Mot. for Sum. J. On May 2,

---

[1] On March 1, 2004, the INS ceased to exist, as Congress transferred its functions to DHS. Within DHS, USCIS assumed responsibility for the adjudication of naturalization applications.

2

Case No.: 10-CV-03372-LHK
ORDER GRANTING DEFENDANTS' MSJ; DENYING PLAINTIFF'S MSJ

1   2007, USCIS approved the second I-130 Petition submitted on behalf of Plaintiff.  On September 6,
2   2007, while in removal proceedings, Plaintiff also applied for naturalization via a "N-400
3   Application" as the spouse of a U.S. citizen.  *See* Exh. I to Defs. Mot. for Sum. J.  In order to
4   naturalize as a spouse of a U.S. citizen, Plaintiff was required to establish that he resided
5   continuously in the U.S. as a LPR during the three years immediately preceding his application for
6   naturalization.  *See* 8 U.S.C. §1430(a).

On July 9, 2008, the immigration judge (IJ) approved Plaintiff's second I-485 Application in a summary one-page order.  *See* Exh. F. to Defs.' Mot. for Sum. J.  The USCIS issued Plaintiff a new I-551 Permanent Resident Card ("green card"), which indicated that Plaintiff became an LPR on July 9, 2008.  *See* Exh. J. to Defs.' Mot. for Sum. J.  The parties agree that the IJ's July 9, 2008 order granted Plaintiff LPR status as of July 9, 2008.  However, the parties dispute whether the IJ's order also found Plaintiff removable.  That dispute is analyzed below.

On May 20, 2009, USCIS interviewed Plaintiff in connection with his application for naturalization.  On July 29, 2009, USCIS denied Plaintiff's naturalization application on the ground that Plaintiff did not satisfy the relevant three-year continuous residency requirement.  *See* Exh. K to Defs.' Mot. for Sum. J.  USCIS reasoned that Plaintiff LPR's status re-started on July 9, 2008, the day the IJ approved his second I-485 Petition.  *Id*.  Thus, Plaintiff would not satisfy the residency requirement until July 2011.  Plaintiff appealed USCIS's denial of his application for naturalization.  *See* Exh. L to Defs.' Mot. for Sum. J.  On June 10, 2010, USCIS upheld the denial of Plaintiff's application for naturalization for failure to satisfy the three-year continuous residency requirement.  *See* Exh. M to Defs. Mot for Sum. J.

**C.  Procedural History before this Court**

On July 30, 2010, Plaintiff filed suit in this Court, seeking relief from the USCIS decision.  *See* Compl. [dkt. #1].  Pursuant to the District's Immigration Mandamus Cases Order (General Order 61), Plaintiff moved for summary judgment, and Defendants opposed.  On November 12, 2010, the Court denied Plaintiff's motion for summary judgment for failure to plead proper subject matter jurisdiction.  *See* November 12, 2010 Order [dkt. #11].  The Court, however, granted

3

Case No.: 10-CV-03372-LHK
ORDER GRANTING DEFENDANTS' MSJ; DENYING PLAINTIFF'S MSJ

Plaintiff leave to amend to plead proper jurisdiction under 8 U.S.C. § 1421 (regarding a district court's authority to review denials of applications for naturalization). *See id*. at 3.

Plaintiff filed an amended complaint on November 17, 2010 remedying the jurisdictional deficiency. *See* Am. Compl. [dkt. #12]. Defendants filed a motion for summary judgment on December 1, 2010, and Plaintiff then filed a cross-motion for summary judgment on January 18, 2011. The hearing on those motions was originally scheduled for February 24, 2011. Pursuant to the parties' joint stipulation requesting a continuance due to counsel's personal matter, the Court continued the hearing on the motions to March 10, 2011. *See* Dkt. #21. Counsel for both parties appeared at the March 10, 2011 motion hearing.

## II.  LEGAL STANDARDS

This Court is authorized to conduct a *de novo* review of Plaintiff's application for naturalization pursuant to 8 U.S.C. § 1421(c). In its review, the Court "has the final word" and need not defer to any of USCIS's findings or conclusions. *See United States v. Hovsepian*, 359 F.3d 1144, 1162 (9th Cir. 2004) (*en banc*). However, if the Court concludes that there are no "disputed issues of material fact," it need not engage in its own fact-finding and may grant a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. *See, e.g.*, *Alenazi v. USCIS*, 2010 U.S. Dist. LEXIS 108458 (S.D. Cal. Oct. 12, 2010); *see also Abghari v. Gonzales*, 596 F. Supp. 2d 1336, 1343 (C.D. Cal. 2009) ("The Court need not proceed with an evidentiary hearing or otherwise conduct new fact finding where the Court believes that the legal question it has identified ... is a threshold matter.").

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* ). In a motion for summary judgment, the Court draws all reasonable inferences that may be taken from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). "When a motion for

4

summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e)(2).

### III.   DISCUSSION

Defendants contend that Plaintiff is not yet eligible for naturalization as a matter of law because: (1) he does not meet the statutory continuous residency requirement; and (2) he has not demonstrated good moral character. Because the Court finds that summary judgment appropriate based on Plaintiff's ineligibility for naturalization under the continuous residency requirement, the Court does not reach Defendants' argument concerning Plaintiff's moral character.

#### A.   The Dispute over Plaintiff's Continuing LPR Status

In order to be naturalized, Plaintiff bears the burden of establishing by a preponderance of the evidence each of the requirements enumerated in the relevant section of the Immigration and Nationality Act. *See* 8 U.S.C. §1427(a); C.F.R. § 316.2(b). Generally, in order to be eligible for naturalization, an alien must continuously reside in the U.S. for five years after being lawfully admitted for permanent residence. *See* 8 U.S.C. §1427; 8 C.F.R. §316.5. However, the five-year period is reduced to three years if the alien is applying for naturalization as the spouse of a U.S. citizen and lived in marital union with the spouse for three years prior to applying for naturalization. *See* 8 U.S.C. §1430(a); 8 C.F.R. §319.1. In addition, the applicant must satisfy the continuous residence requirement from the time the naturalization application is filed up to the time of admission to citizenship. *See* 8 U.S.C. §1427(a)(2); 8 C.F.R. §316.2(a)(6).

An alien's LPR status is recorded on the date the USCIS or the IJ approves the alien's I-485 application. *See* 8 U.S.C. § 1255(b); 8 C.F.R. § 245.2(a)(5)(ii). "Lawfully admitted for permanent residence" is defined as "the status of having been lawfully accorded the privilege of residing permanently in the US as an immigrant in accordance with immigration laws, such status not having changed." 8 U.S.C. §1101(a)(2).

5

Case No.: 10-CV-03372-LHK
ORDER GRANTING DEFENDANTS' MSJ; DENYING PLAINTIFF'S MSJ

Here, the INS approved Plaintiff's first I-130 Petition and first I-485 Application on December 15, 2000. At the time of the I-130 Petition approval, the Department of State allocated an immigrant visa to Plaintiff, and subtracted Plaintiff's immigrant visa from the total number of visas available in the family-based immigrant category for that year. *See* Defs.' Mot. for Sum. J. at 10. Upon the INS's approval of his I-485 Application, Plaintiff became a LPR or green card holder. While in removal proceedings,[2] Plaintiff applied for, and received a second green card as a result of the IJ's July 9, 2008 Order granting Plaintiff's application for adjustment of status. The State Department issued Plaintiff a second immigrant visa, and subtracted Plaintiff's second immigrant visa from the total number of visas available in the family based immigrant category for that year as well. *Id*.

**B.     Whether the IJ's July 9, 2008 Order found Plaintiff Removable?**

The parties dispute the legal significance of the July 9, 2008 Order with respect to Plaintiff's LPR status. The Defendants, as did the USCIS in its decision below, assert that the IJ's July 9, 2008 Order found Plaintiff removable. If so, both sides acknowledge that Plaintiff's previous LPR status would have "terminated" on that date. However, the Court cannot find, on *de novo* review, that the IJ necessarily found Plaintiff removable. The July 9, 2008 Order is a one-page checklist that merely shows that the IJ granted Plaintiff's application for adjustment of status. *See* Exh. F to Defs.' Mot. for Sum. J. (with checkmarks on the line stating that "Respondent's application for adjustment of status" was "granted"). Nowhere does it actually enumerate that Plaintiff was found removable. The July 9, 2008 Order does state that it "is solely for the convenience of the parties. If the proceedings should be appealed or reopened, the oral decision will become the official opinion in the case." The parties did not provide a transcript of the oral decision.[3]

---

[2] To be clear, Plaintiff is *not* currently in removal proceedings. Rather, Plaintiff seeks the affirmative relief of naturalization as a U.S. citizen. *Compare Castaneda v. Holder*, 2009 U.S. Dist. LEXIS 110273, *10 (N.D. Cal. Nov. 23, 2009) (limiting scope of district court review of naturalization application while removal proceedings are pending against applicant).

[3] At the March 10, 2011 hearing, the parties represented to the Court that no transcript of the July 9, 2008 hearing was made because neither party appealed the IJ's decision granting Plaintiff's second application for adjustment of status.

6
Case No.: 10-CV-03372-LHK
ORDER GRANTING DEFENDANTS' MSJ; DENYING PLAINTIFF'S MSJ

Defendants further argue that the IJ *must have* found Plaintiff removable because, otherwise, the IJ would not have adjudicated Plaintiff's second I-485 Application. This is an eminently plausible argument, and may, in fact, be true. The Court, however, will not infer a finding of removal solely on the basis of the IJ's grant of Plaintiff's application for adjustment of status. An inference that the IJ found Plaintiff removable is especially inappropriate because the July 9, 2008 Order includes options regarding removal and also includes an option entitled "other." None of those options, however, was checked by the IJ.

On this record, the Court cannot find that the IJ found Plaintiff removable.

### C. Whether Plaintiff's LPR Status re-started on July 9, 2008?

Defendants also argue that, aside from the issue of removability, Plaintiff's LPR status re-started on July 9, 2008, the day the IJ approved his second I-485 adjustment of status application. *See* Defs.' Mot. for Sum. J. at 7-10. Defendants contend that since Plaintiff's LPR status re-started on July 9, 2008, Plaintiff will not satisfy the relevant three-year residency requirement until July 2011. Plaintiff responds that, without a final order of removability, his LPR status never changed or was terminated, and thus he meets the continuous residency requirement. Defendants have the better of the argument.[4]

There are only a limited number of visas that may be awarded to aliens based on family-based immigration. *See* 8 U.S.C. §§ 1151, 1153. When a visa petition (I-130) is granted, the USCIS requests a family-based immigrant visa number from the State Department. 8 C.F.R. § 245.1(g). Upon approval of an "adjustment of status application" (I-485), the State Department subtracts one visa from the total number available for the fiscal year. 8 U.S.C. § 1255(b). The statute specifically states, in relevant part, that:

> [u]pon the approval of an application for adjustment . . . the Attorney General shall record *the alien's lawful admission for permanent residence as of the date the order of the Attorney General [or USCIS by delegation] approving the application for the adjustment of status is made*, and the Secretary of State shall reduce by one the number of the preference

---

[4] Individuals subject to either the three-year or five-year residency requirements are eligible to file their applications for naturalization three months early. *See* 8 U.S.C. § 1445(a); 8 C.F.R. § 334.2(b). Here, based on the July 9, 2008 start date, Plaintiff could potentially file his application for naturalization as soon as April 2011.

7

Case No.: 10-CV-03372-LHK
ORDER GRANTING DEFENDANTS' MSJ; DENYING PLAINTIFF'S MSJ

visas authorized to be issued. . . .

8 U.S.C. § 1255(b) (emphasis added).

In order to qualify for an adjustment of status, an alien must: (1) have applied for adjustment of status; (2) be eligible to receive an immigrant visa; and (3) an immigrant visa must be immediately available at the time he or she files the adjustment application. *See* 8 U.S.C. § 1255(a). Furthermore, 8 C.F.R. Section 204.2(h)(2), provides, in pertinent part, that:

> [w]hen a visa petition has been approved, and subsequently a new petition by the same petitioner is approved for the same preference classification on behalf of the same beneficiary, the latter approval shall be regarded as a reaffirmation or reinstatement of the validity of the original petition, *except when . . . an immigrant visa has been issued to the beneficiary as a result of the petition approval.*

8 C.F.R. § 204.2(h)(2) (emphasis added). In other words, if an alien is the beneficiary of a second visa petition, the alien may not use the first petition to his adjust his status a second time. An alien may only use an approved immigrant visa petition *once* to adjust status to lawful permanent residence. *See Matter of Villarreal-Zuniga*, 23 I&N Dec. 886 (2006).

As explicitly enumerated under 8 U.S.C. § 1255(b), the Court finds that Plaintiff's LPR status began anew on the date that the second visa was issued. Plaintiff may not bootstrap his years of residency through the simultaneous use of two different immigrant visas. *See* 8 C.F.R. § 204.2(h)(2) (the grant of a subsequent visa petition to the same petitioner is *not* a "reaffirmation or reinstatement of the original petition" where immigrant visa has been issued to beneficiary as a result of the petition approval). At the March 10, 2011 hearing, counsel for Plaintiff represented that Plaintiff could have sought the alternate remedy of cancellation of removal. If cancellation of removal was granted, both parties acknowledge that it would have been unnecessary to seek a new visa petition or a new naturalization application, as Plaintiff could have simply relied on his first grant of LPR status for purposes of the continuous residency requirement. *See* 8 C.F.R. §§ 1240.11(a) and 1240.20. Counsel for Plaintiff also represented that, for strategic reasons, aliens in removal proceedings may often seek adjustment of status as relief instead of cancellation of removal, in order to preserve the cancellation of removal remedy, which is a one-time remedy, for

8

Case No.: 10-CV-03372-LHK
ORDER GRANTING DEFENDANTS' MSJ; DENYING PLAINTIFF'S MSJ

a later, potential removal proceeding. Plaintiff's counsel also stated that Plaintiff sought, and received, the relief of adjustment of status expressly to overcome his deportability. Plaintiff's argument that "his status as an LPR was never terminated, rescinded, or changed in any way" completely ignores the fact that Plaintiff chose to seek adjustment of status in order to protect himself from deportation. Such relief included the granting of LPR status by the IJ, and the issuance of a second green card by the USCIS with a start date of July 9, 2008.

Furthermore, both of the visas awarded to Plaintiff were statutorily required to have been subtracted from the total number of family-related immigration visas available during their respective years. Although the parties agreed that, in practice, the annual statutory cap for family-related immigrations visas has never been exceeded, it is still true that Plaintiff used his second visa to adjust his status a second time. After receiving such a benefit from the IJ, Plaintiff may not now claim that his original LPR status continued without interruption. The Court will not ignore the second grant of adjustment of status in considering whether Plaintiff meets the relevant continuous residency requirement.

Plaintiff contends that the only way his LPR status, based on the first visa, could have changed was with a final order of removability. Plaintiff relies heavily upon the Board of Immigration Appeals (BIA) decision in *Matter of Lok*. *See* 18 I&N Dec. 101 (BIA 1981). In *Matter of Lok*, respondent, a LPR, was convicted of narcotics offenses and placed in removal proceedings. Respondent conceded deportability, but argued he was eligible for relief from deportation through a "discretionary waiver" based on his seven consecutive years of lawful unrelinquished domicile. *Id*. at 103. The BIA ruled that, in those circumstances, the termination of respondent's lawful permanent resident status ended upon the entry of a final order of deportation. However, the BIA also recognized "other circumstances" in which lawful permanent resident status may change, including rescission of adjustment status, adjustment to nonimmigrant status, and intentional or unintentional relinquishment of status. *Id*. at 107.

Plaintiff's reliance is not so much misplaced as incomplete. The BIA's 1981 *Matter of Lok* decision does not encompass every way in which an alien's LPR status can change, nor does it claim to. *See United States v. Yakou*, 428 F.3d 241, 250 (D.C. Cir. 2005) ("'termination' of LPR

9

status under 8 C.F.R. § 1.1(p) [and *Matter of Lok*] is only a subset of the 'change' of such status mentioned in the INA, 8 U.S.C. § 1101(a)(20), and does not address the totality of the means by which Yakou's LPR status could change."). As explained above, the allocation and use of a second immigrant visa by Plaintiff, especially where Plaintiff chose to seek adjustment of status as relief from deportation and was *actually granted such relief*, constitutes a change in Plaintiff's status.

In sum, Defendants are correct that Plaintiff's LPR status re-started on July 9, 2008. Plaintiff does not meet the three-year continuous residency requirement on his present application and is therefore statutorily ineligible for naturalization. Therefore, there is no genuine issue as to any material fact, and Defendants are entitled to judgment as a matter of law.

## IV.   CONCLUSION

Accordingly, Defendants' motion for summary judgment is GRANTED, and Plaintiff's cross-motion for summary judgment is DENIED. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: March 14, 2011

_____
LUCY H. KOH
United States District Judge